UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WISCONSIN ELECTRICAL EMPLOYEES HEALTH
AND WELFARE PLAN, et al.,

            Plaintiffs,

    v.                                                          Case No. 18-cv-0561-bhl

LEWINS ELECTRIC LLC,

            Defendant.

---

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

      It is sometimes admirable to go down swinging. History often valorizes a futile last stand—the 300 Spartans at Thermopylae, Galileo Galilei before the Holy Inquisition. Lewins Electric LLC's flailing attempt to skirt its Employee Retirement Income Security Act obligations will inspire no such reverence. Rather, this case will serve as a cautionary tale. Here, wisdom counseled concession, but Defendant paid it no heed. At a September 8, 2021 mediation, the parties agreed on a settlement. Two months later, Defendant's principal changed his mind and declined to sign the settlement agreement. This was a blunder. Indeed, Lewins Electric admits that, in 2016, it failed to make fringe benefit contributions to Plaintiff Funds, but mistaking persistence for legal integrity, continues to pursue the untenable notion that the collective bargaining agreement did not require those contributions. The record indicates otherwise. For that reason, Plaintiffs' motion for summary judgment will be granted.

### FACTUAL BACKGROUND[1]

      Randy Lewins is the sole owner of Lewins Electric, LLC, which was formed in October 2003 and is primarily in the business of performing electrical work in residential remodeling projects. (ECF No. 27 ¶19.) On July 24, 2003, Lewins executed a Letter of Assent on behalf of Lewins Electric, authorizing Fox Valley Division, Wisconsin Chapter, N.E.C.A., Inc. to act as its

---

[1] These facts are drawn from the parties' proposed statements of undisputed facts (and responses). (ECF Nos. 24, 27 & 32.) Disputed facts are viewed in the light most favorable to the non-moving party.

collective bargaining representative for labor agreements negotiated with IBEW Local No. 577. (ECF No. 24 ¶5.) Pursuant to the Letter of Assent, Lewins Electric is bound by the terms and conditions of the collective bargaining agreement (CBA). (*Id.* ¶6.) Among the terms are those that require Lewins Electric to make timely payments to the Wisconsin Electrical Employees Health and Welfare Plan, Wisconsin NECA – IBEW Retirement Plan, Appleton Area Electrical Workers Joint Apprenticeship and Training Trust Fund, Wisconsin Electrical Employees Apprenticeship Coordinator Fund, IBEW Local 577 Union Dues Fund, and IBEW Local 577 Vacation and Holiday Pay Fund (collectively "Funds") for each employee covered by the CBA. (*Id.* ¶8.)

As a signatory to the CBA, Lewins Electric is also bound by the Wisconsin Electrical Employees Health and Welfare Plan Trust Agreement. (*Id.* ¶7.) Section 8.3(a) of that agreement provides that trustees have authority to:

> Establish rules and regulations providing for liquidated damages to be added to any delinquent contributions and to take such legal action, including proceedings at law, in equity or, if the Trustees so choose to submit the issue, in arbitration, as their discretion may be necessary to collect contributions and liquidated damages assessed by them and to recover from any delinquent contributor on behalf of the Plan all costs and reasonable attorney's fees incurred in connection therewith. (*Id.* ¶13.)

The trustees adopted the Delinquency Collection Policy and Procedures pursuant to this authority. (*Id.* ¶14.) The Policy provides that a delinquent employer shall be liable for:

(a) The delinquent collection amount;
(b) Liquidated damages at the rate of $200 if the contribution or contribution report is received after the Due Date, plus 1% multiplied by the total contribution due for each day thereafter to a maximum of 20%;
(c) Interest at the rate of 1% for the first month, or a part thereof, that the remittance is late. If unpaid amounts continue to be overdue, additional interest at the rate of 1% shall be assessed for each month or a part thereof, on all contributions due including any prior interest which remains unpaid;
(d) All costs of recovery, including but not limited to, attorney's fees and costs of prosecution of the legal action. (*Id.* ¶16.)

In 2016, Lewins Electric employed eight different individuals on a temporary, part-time basis. (ECF No. 27 ¶33.) Cumulatively, those individuals worked 979 hours that year. (*Id.* ¶35.) In September 2017, the Funds' professional auditors discovered that Lewins Electric had failed to

report and make contributions on any of the temporary employees. (ECF No. 24 ¶¶10-12.)[2] The Funds demanded payment of $17,934.63 in contributions for the employees not reported by Lewins Electric, plus $5,874.65 in assessed interest and liquidated damages. (ECF No. 27 ¶17.) To date, Lewins Electric has not paid the demanded contribution amount. (*Id.* ¶18.)

## SUMMARY JUDGMENT STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

Plaintiffs contend that, in failing to make benefit contributions, Lewins Electric: (1) violated ERISA Section 515 and (2) breached the Health and Welfare Plan Trust Agreement. Lewins Electric admits that it is bound by the CBA. (ECF No. 27 ¶6.) It also admits that it did not make payments on behalf of any employees during the 2016 calendar year. (*Id.* ¶12.) Its only defense is that "temporary employees," as provided for in Section 13.07 of the CBA, are not "covered employees" for which it is required to pay fringe benefits, like ERISA contributions. (ECF No. 12-1 at 20 & ECF No. 28 at 3.)

The Fund claims that "covered employees" refers to all employees performing electrical or electrical-related work, without regard to union membership or permanent employment status. (ECF No. 31 at 3-5.) Thus, summary judgment turns on whether the record contains sufficient evidence to send the question "Who is a covered employee under the CBA?" to the jury. Because

---

[2] Lewins disputes that he was required to make any such contributions, but he does not dispute that no contributions were made. (ECF No. 27 ¶¶12, 18.)

no rational trier of fact could find that "covered employees" excludes "temporary employees" as Defendant claims, the motion for summary judgment will be granted.

### I. The Collective Bargaining Agreement Counts "Temporary Employees" as "Covered Employees" for Purposes of Fringe Benefit Contributions.

"'Interpretation of an unambiguous contract is a question of law.'" *First Bank & Tr. v. Firstar Info. Servs., Corp.*, 276 F.3d 317, 322 (7th Cir. 2001) (quoting *Bechtold v. Physicians Health Plan of N. Ind., Inc.*, 19 F.3d 322, 325 (7th Cir. 1994)). "When interpreting an agreement, the court's objective 'is to ascertain the true intentions of the parties as expressed by the contractual language.'" *First Bank*, 276 F.3d at 322 (quoting *State ex rel. Journal/Sentinel, Inc. v. Pleva,* 456 N.W.2d 359, 362 (Wis. 1990)). "Unless a term is expressly defined in the contract, words and phrases must be given their plain and ordinary meaning." *First Bank*, 276 F.3d at 322 (citing *Meyer v. U.S. Fire Ins. Co.,* 582 N.W.2d 40, 41 (Wis. App. Ct. 1998)). "[T]he court must consider the contract as a whole to provide each provision with the meaning intended by the parties." *First Bank*, 276 F.3d at 322 (citing *Campion v. Montgomery Elevator Co.,* 493 N.W.2d 244, 249 (Wis. App. Ct. 1992)). "If this inquiry indicates that the contract is unambiguous, the court must give effect to the agreement as written." *First Bank*, 276 F.3d at 322 (citing *Borchardt v. Wilk,* 456 N.W.2d 653, 656 (Wis. App. Ct. 1990)).

CBA Section 14.02, the Health and Welfare Insurance provision, states:

> The Employer agrees to contribute nine dollars and fifteen cents ($9.15) per hour on all clock hours worked, by employees covered under the terms and conditions of this Agreement, to a jointly administered Trust Fund, for Health and Welfare Insurance for such employees. (ECF No. 12-1 at 23.)

While the CBA does not expressly define "employees covered under the terms and conditions of this Agreement," other provisions in the agreement make the parties' intentions clear: a "covered employee" is any employee performing electrical or electrical-related work. For example, the Non-Discrimination preamble states:

> It is the continuing policy of the Employer and the Union that the provisions of this Agreement shall be applied to *all employees* without regard to race, sex, age, color, creed, or national origin and/or as required by federal and state laws. (ECF No. 12-1 at 2) (emphasis added).

Section 2.09 provides:

> An Employer, as recognized by this Agreement, who contracts for electrical work, shall mean a person, firm or corporation whose principal business is electrical contracting. (*Id.* at 5.)

Section 5.04 states:

> Workmen employed under the terms and conditions of this Agreement shall perform the following work: all channeling, chasing, handling, and moving of electrical materials, motors, equipment and materials such as conduit fixtures and boxes. (*Id.* at 15.)

Section 7.01 says:

> Any man reporting for work and being laid off, shall receive not less than two (2) hours pay at the regular straight time rate of pay. (*Id.*)

Sections 13.02 and 13.05 set forth groups of employees "in the trade" that employers may only hire through a referral from Local No. 577, and categorization is defined by the type of work being performed, not union or permanent employment status. (*Id.* at 19-20.)

In all of these instances, employees are defined by the work they perform, not the permanence of their position. Moreover, the 2003 Letter of Assent Lewins Electrics executed specifically provided that:

> The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent *for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites*. (*Id.* at 32) (emphasis added).

The CBA plainly means to include "temporary employees" among "covered employees" for purposes of fringe benefit contributions.

## II. Lewins Electric Cannot Show That the Definition of "Covered Employee" Is a Genuine Issue of Material Fact.

Lewins Electric raises two arguments to counter the clear evidence supporting Plaintiffs' CBA interpretation. First, it suggests that CBA Section 13 is proof that "temporary employees" are distinct from "covered employees." Second, it reasons that because it was not required to withhold union dues from temporary employees, it was also not required to contribute fringe benefits. Both arguments fail.

### A. Nothing in CBA Section 13 Excludes "Temporary Employees" From "Covered Employees" Under CBA Section 14.02.

CBA Section 13 sorts employment applicants into four groups based on work experience. (ECF No. 12-1 at 19-20.) It also requires that the Union "be the sole and exclusive source of referral of applicants for employment" unless the applicant "registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from

the time of receiving the Employer's request." (*Id.*) In that case, "the Employer shall be free to secure applicants without using the Referral Procedure[.]" (*Id.* at 20.) However, those applicants, if hired, are considered "temporary employees," and the employer must notify the Union of them and replace them "as soon as registered applicants for employment are available under the Referral Procedure." (*Id.*)

According to Lewins Electric, "temporary employees" are not "covered employees" because "[i]t is hard to imagine a worker being considered part of a bargaining unit when the contract negotiated on behalf of that bargaining unit calls for his or her discharge, without recourse, in favor of another member of a bargaining unit." (ECF No. 28 at 3.) Notwithstanding its apparently limited imagination, Lewins Electric acknowledges that the employees it hired were "in the trade," and thus, it was required to hire them pursuant to Section 13.05 of the CBA. (ECF No. 27 ¶24.) So these employees were "covered under the terms and conditions of [the] agreement." (ECF No. 12-1 at 23.) This is all that CBA Section 14.02 requires to trigger mandatory fringe benefit contributions. (*Id.*)

That the temporary employees were subject to quick replacement is virtually *a priori*—they were *temporary* employees. That those employees might not ever draw on the insurance benefits Lewins Electric contributed to the Funds is irrelevant. *See Cent. States, Se. & Sw. Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994) (holding that a pension fund is injured even when an employer fails to pay a required contribution on behalf of an employee who may never receive any benefit from that fund). Rather than asking the Court to read the CBA as intended, Lewins Electric requests that we rewrite it *ex post*. This is not permitted.

As an additional matter, accepting Lewins Electric's argument would lead to an absurd policy result. CBA Section 13.07 requires employers to notify the Union when they hire temporary employees so that the Union may replace those employees with registered applicants when such applicants become available. (ECF No. 12-1 at 20.) But Lewins Electric admits it flunked this duty. (ECF No. 28 at 2.) As a result, the Union had no way of timely replacing the temporary employees. Assuming Lewins Electric's interpretation of "covered employee" is correct, its breach of Section 13.07 would allow it to maintain a non-covered workforce indefinitely and thereby refrain from making insurance fund contributions that would otherwise be required. Public policy suggests that one party to a contract should not be permitted to profit by flagrantly defrauding the other.

### B. Whether Lewins Electric Was Obligated to Pay Union Dues Under CBA Section 14.04 Is Irrelevant.

Lewins Electric next dedicates two pages (of its four-page response brief) to proving that it was under no obligation to pay union dues for non-union temporary employees. This assertion has no relevance to the issue in dispute. Lewins Electric cites to CBA Section 14.04:

> "The Employer agrees to deduct and forward to the Financial Secretary of the Local Union – upon receipt of a voluntary written authorization – the additional working dues from the pay of each IBEW member." (ECF No. 12-1 at 24.)

As Plaintiffs highlight, to the extent this red herring proves anything, it is that Section 14.02 (the provision relevant to this case) *applies* to "temporary employees." The different language used in Section 14.04 demonstrates that the parties to the CBA understood that an employer's obligation to contribute to the Funds was not limited to members of Local No. 577, but to a broader group of employees performing electrical work. (*See* ECF No. 31 at 7.) Assuming the purpose of the appeal to Section 14.04 was actually to argue that non-union employees are exempt from Fund contributions, that argument is plainly barred by *McClelland*. *See McClelland*, 23 F.3d at 1258 (holding that it is "patently illegal" for employers to "distinguish between members of a bargaining unit who belong to the union and those who do not").

### CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 22) is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 8, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge